UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

JUAN CARLOS GOMEZ MARTINEZ, et al.,

                   Plaintiffs,             12 Civ. 503

   -against-                          OPINION

SPICE AVENUE INC., et al.,

                   Defendants.

------------------------------------------X

A P P E A R A N C E S:



    Attorney for Plaintiffs

    MICHAEL FAILLACE & ASSOCIATES, P.C.
    60 East 42nd Street, Suite 2020
    New York, NY 10165
    By: Michael A. Faillace

    Attorney for Defendants

    LAW OFFICE OF RICHARD E. SIGNORELLI
    799 Broadway, Suite 539
    New York, NY 10003
    By: Richard E. Signorelli, Esq.
        Bryan Ha, Esq.

    LIPMAN & PLESUR, LLP
    500 North Broadway, Suite 105
    Jericho, NY 11753
    By: Robert D. Lipman, Esq.

**Sweet, D.J.**

Defendants Spice Avenue Inc., Bangkok Palace II, Inc., Spice City, Inc., Spice West, Inc., Spice Thai Hot & Cool LLC, Kitlen Management, Inc., Spice Corner 236 Inc., Kittigorn Lirtpanaruk and Yongyut Limleartvate (collectively, "Defendants") have moved to dismiss the Amended Complaint in part pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Amended Complaint is dismissed to the extent it asserts claims seeking collective action or class action certification for any period of time prior to December 11, 2009.

## Prior Proceedings

Plaintiffs filed the initial complaint in this action on January 20, 2012. An Amended Complaint was filed on July 3, 2012 alleging that the corporate defendants are "seven corporations that act in partnership with one another in the operation and management of a chain of Thai restaurants in the state of New York" (Amended Compl. ¶ 2), and that they are allegedly "current and former employees of Defendants, primarily employed as delivery workers." (Id. ¶ 56). It is further alleged

1

that, "[f]or at least six years prior to the filing of this action," Defendants failed to pay them minimum and overtime wages as required under the Fair Labor Standards Act ("FLSA"), the New York Labor Law, and the spread of hours wage order of the New York Commissioner of Labor. (Id. ¶¶ 12-13).

Plaintiffs seek to bring this action "on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants," (id. ¶¶ 14-15), and seek certification of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and as a class action pursuant to Fed. R. Civ. P. 23 for the period from "on or after the date that is six years before the filing of the complaint in this case, January 2006, to entry of judgment in this case (the 'New York Class Period')." (Amended Compl. ¶¶ 516, 13-14).

The instant action is substantively similar to three actions previously filed in this District: Marlon Castro, et al. v. Spice Place, Inc., et al., 07 CV 4657 (RWS); Guillermo Gonzales v. Spice Place, Inc., et al., 08 CV 3887 (RWS); and Jose Castillo, et al. v. Spice Place, Inc., et al., 08 CV 6811 (RWS) (collectively, "prior actions"). Many of the defendants named in the prior actions are also named as defendants in the instant action, including Spice Avenue, Inc., Bangkok Palace II,

Inc., Spice City, Inc., Spice West, Inc., Kitlen Management, Inc., Kittigorn Lirtpanaruk, and Yongyut Limleartvate. The plaintiffs in each of the prior actions alleged that defendants failed to pay them minimum and overtime wages as required under the FLSA and under New York law. (Castro Compl. ¶¶ 4-5; Gonzalez Amended Compl. ¶¶ 37, 43, 51; Castillo Compl. ¶¶ 75, 81, 88, 108).

The Plaintiffs in each of the prior actions also sought collective action and class action certification on behalf of themselves and other similarly-situated employees. The Castro plaintiffs sought certification of a collective action and a class action for the period from "on or after the date that is six years before the filing of the complaint in this case, June 2001, to entry of judgment in this case (the 'New York Class Period')." (Castro Compl. ¶¶ 54, 6-7). In Gonzales, the plaintiff sought collective action and class action certification for "the period from April 30, 2002 to the date of this complaint [i.e., May 1, 2008]." (Gonzalez Amended Compl. ¶ 6). In Castillo, the Plaintiffs sought collective action certification for the period from July 30, 2005 through July 30, 2008 and class action certification for the period from July 30, 2002 through July 30, 2008. (Castillo Compl. ¶¶ 66, 87.)

3

At the time that the prior actions were pending, the Office of the Attorney General of the State of New York ("OAG") was conducting an investigation of the Defendants' alleged wage law violations. (Order Facilitating Settlement, p. 1). In December 2009, "the OAG [] negotiated a settlement of its investigation with defendants which serves the interests of plaintiffs [] in the form of a document entitled 'Assurance of Discontinuance'." (Id.). The Assurance of Discontinuance was fully executed on December 14, 2009.

In connection with the settlement of the OAG's investigation, the parties also settled the Castro action and the Gonzales action, and these actions were dismissed with prejudice pursuant to stipulations of dismissal so-ordered by the Court (collectively, "Dismissal Orders"). Each of the Dismissal Orders contains a prohibition against the filing of any collective or class action against any of the defendants for alleged wage law violations, as follows:

> Upon the full execution of the Assurance of Discontinuance executed by Andrew M. Cuomo, Attorney General of the State of New York, and the corporate defendants herein, no class or collective action may be brought against defendants for alleged wage-hour violations for any time up to the date of this Order.

4

The order dismissing the Castro action is dated November
17, 2009. The order dismissing the Gonzales action is dated
December 11, 2009.

The instant motion, based in part on the
Dismissal Order, was heard and marked fully submitted on
January 23, 2013.

**The Amended Complaint As A Collective Action Is Dismissed**

The Dismissal Orders entered in the Castro and
Gonzales actions resolved those cases and banned collective and
class actions covering the same period of time covered by the
Defendants' settlement with the OAG of the wage-hour claims of
its employees. Concurrently with the Dismissal Orders, the
Defendants entered into a negotiated settlement with the OAG
pursuant to an Assurance of Discontinuance and paid the sum of
$650,000 as restitution for unpaid wages, overtime pay and other
compensation, to be distributed by the OAG to persons employed
by the Defendants during the period from "September 1, 1999
through the date of execution of this Assurance of
Discontinuance[.]" Each of the Dismissal Orders provided that,
"[u]pon the full execution of the Assurance of Discontinuance
... no class or collective action may be brought against

5

defendants for alleged wage-hour violations for any time up to the date of this Order." The later of the two Dismissal Orders is dated December 11, 2009.

The Assurance of Discontinuance together with the Dismissal Orders established a framework for distributing funds to employees with wage-hour claims against the Defendants through December 11, 2009, in lieu of a class or collective action. Essentially, the OAG would distribute the funds from the defendants to all eligible employees to satisfy and secure the release of their wage-hour claims, thereby obviating the need for any class or collective action. Eligible employees who did not receive a distribution from the OAG are not prohibited from bringing individual wage-hour claims against the defendants. They are free to bring such claims to recover any unpaid wages, overtime pay and other compensation that may be owed them. Only class and collective actions are prohibited.

The Plaintiffs acknowledge that this prohibition of class and collective actions is "presumptively reasonable" because the OAG's investigation (which culminated in the Assurance of Discontinuance) was not limited to any particular employees but rather "covered workers generally at the Defendants' restaurants, and included a mechanism for

6

individuals deemed eligible by OAG to submit a claim and release and receive payment from the settlement monies paid by the [defendants] to OAG." (Opp. Mem. Law, p. 3).

However, the Plaintiffs contend that they may assert class and collective action claims in this case because they allegedly "did not receive adequate notice of the OAG investigation and claims procedure." (Id.). Without such notice, they claim, enforcement of the prohibition against class and collective actions would violate their due process rights. (Id. at 3-4).

If the Plaintiffs did not receive adequate notice as they claim, and did not receive any distribution from the OAG, they may seek recovery of any unpaid wages, overtime pay and other compensation that they may be owed by bringing individual wage-hour claims against the Defendants. (Def. Reply Memo, p. 3). Nothing in the Dismissal Orders or the Assurance of Discontinuance prohibits them from asserting individual wage-hour claims in their complaint. Accordingly, none of their substantive rights have been waived or compromised.

Plaintiffs rely on Richards v. Jefferson County, Alabama, 517 U.S. 793 (1996), for the general proposition that

7

"one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (Opp. Mem., p. 4). In Richards, the Alabama Supreme Court applied the doctrine of res judicata and ruled that the petitioners' claims were barred by a prior adjudication on the merits in an earlier litigation. See Richards, 517 U.S. at 795-96. The Supreme Court reversed, holding that "[b]ecause petitioners received neither notice of, nor sufficient representation in [the prior litigation], that adjudication, as a matter of federal due process, may not bind them and thus cannot bar them from" asserting their claims. Id. at 805.

Richards is inapposite here because Defendants are not contending that Plaintiffs are barred under the doctrine of res judicata from asserting their wage-hour claims in this action. Unlike in Richards, where the petitioners were barred from asserting their claims based on a prior adjudication, the Plaintiffs here are free to assert all their claims (and have in fact done so). The Plaintiffs in this case are represented by the same counsel who represented the Plaintiffs in the prior actions. Unlike in Richards, there is no claim here that Plaintiffs were not "adequately represented" by the parties who were present in the prior actions. See id. at 800-801. Nor is

8

there any claim that Plaintiffs' interests conflict with the
interests of the parties who were present in the prior actions.
See id. at 800-801 (noting that in Hansberry v. Lee, 311 U.S.
32. 42-43 (1940), the Supreme Court concluded "that because the
interests of those class members who had been a party to the
prior litigation were in conflict with the absent members who
were the defendants in the subsequent action," the Defendants
could not be bound by the prior adjudication).

Since no monetary claims were waived under the
Dismissal Orders and Assurance of Discontinuance, no notice to
potential plaintiffs was required. See Wal-Mart Stores, Inc. v.
Dukes, 131 S.Ct. 2541, 2558-59 (2011) (notice is not required
under Fed. R. Civ. P. 23(b)(2); the Supreme Court has never held
that the lack of notice violates due process where the monetary
claims do not predominate).

The framework established by the Assurance of
Discontinuance and Dismissal Orders in lieu of a class or
collective action was approved and so-ordered by the Court and
agreed upon by all parties including the Plaintiffs' counsel,
who also represented the Plaintiffs in the prior actions.
Defendants entered into the Assurance of Discontinuance and
agreed to settle the prior actions in reliance on the promise of

9

"finality and repose" with respect to class and collective actions covering the same period covered by these agreements. Such "finality and repose" was critical to the agreements. See Hasbrouck v. BankAmerica Housing Svcs., 187 F.R.D. 453, 458 (N.D.N.Y. 1999) ("'Most importantly, a settlement produces finality and repose upon which people can order their affairs.'") (quoting Hulse v. A.B. Dick Co., 162 Misc.2d 263, 267, 616 N.Y.S.2d 424 (N.Y. Sup. Ct. 1994)); Anita Foundations, Inc. v. Ilgwu Nat. Retirement Fund, 902 F.2d 185, 190 (2nd Cir. 1990) (noting the importance of "[t]he need for finality" in a settlement agreement). As the Court of Appeals for the Second Circuit has noted, "[c]ourts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence." Anita Foundations, 902 F.2d at 190; see also Hasbrouck, 187 F.R.D. at 458 (noting "the important public policy of encouraging settlements").

Pursuant to the Assurance of Discontinuance, the OAG exercised complete and total control over the claims distribution process; it had "absolute discretion to determine the eligibility of individuals and specific amounts to be distributed to individuals [], the time frames for distribution, the identity of the recipients and the manner of distribution,

10

provided, however, that money will be distributed only to those individuals who submit claims to OAG within the time period which may be required by OAG, and who complete and sign a Release[.]" (Assurance of Discontinuance, p. 5 ¶ 2(a)). Defendants were not involved in the claims distribution process. If the Plaintiffs here believe that they are entitled to distributions from the OAG but did not submit claims because they did not receive adequate notice, and they do not want to continue to participate in this lawsuit, it may be appropriate to pursue the matter with the OAG.

**CONCLUSION**

For the reasons set forth above, the Amended Complaint is dismissed to the extent that it asserts claims seeking collective action or class action certification for any period of time prior to December 11, 2009. Leave to replead within twenty days is granted.

**New York, NY**
**June // , 2013**

**ROBERT W. SWEET**
**U.S.D.J.**

11